**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**FRANK H. ABBOTT,**

                                **Plaintiff,**

        **v.**                                                          **3:19-CV-1151**

**NEELY JENNINGS and JEFFREY VANAUKEN**
**IN THEIR INDIVIDUAL CAPACITY,**

                                **Defendants.**
─────────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**


### DECISION & ORDER

**I.      INTRODUCTION**

        Presently before the Court is Defendants Neely Jennings and Jeffrey

VanAuken's motion for summary judgment. Dkt. No. 53. Plaintiff Frank H. Abbott

opposes the motion, Dkt. No. 57, and Defendants reply. Dkt. No. 58.  For the following

reasons, Defendants' motion is granted.

**II.     BACKGROUND**

### Procedural History

        Plaintiff commenced this action against Jeffrey VanAuken ("VanAuken"), a

Captain with the New York State Police and Plaintiff's supervisor, and the New York

State Police ("NYSP").  He asserted claims under the Americans with Disabilities Act

("ADA"), the Equal Protection Clause, and 42 U.S.C. § 1983.  Specifically, the four

causes of action alleged in the Complaint were: 1) harassment/hostile work environment

and discrimination under the ADA; 2) failure to accommodate under the ADA; 3)

1

retaliation (the Complaint did not state the basis for this claim); and 4) a §1983 claim against Defendant VanAuken asserting an equal protection claim based on VanAuken's discrimination of Plaintiff due to Plaintiff's disability.

Defendants moved to dismiss the Complaint.  Plaintiff responded with a cross-motion seeking leave to amend the Complaint.  In the cross-motion, Plaintiff indicated that he withdraw his First and Second Causes of Action under the ADA, withdraw all claims against the NYSP, and sought permission to amend the Complaint to clarify that both remaining claims were  brought under 42 U.S.C. § 1983, to add Major Neeley Jennings ("Jennings"), a human resource official with the NYSP, as a party to the retaliation claim (the First Cause of Action if amendment were permitted), and to add additional facts to the "equal protection-harassment claim against VanAuken" (the Second Cause of Action if amendment were permitted).

The Court issued a decision on the motion to dismiss and cross-motion to amend. All claims brought under the ADA and all claims brought against the NYSP were dismissed.  *See* Dkt. No. 20.  Further, Plaintiff's cross-motion seeking leave to file an amended complaint was granted only to the extent it sought to bring retaliation claims under § 1983 against Defendants VanAuken and Jennings. *Id.*  In reaching this conclusion, the Court stated, *inter alia*, that "to the extent Plaintiff is asserting a disability discrimination claim in the Second Cause of Action in the proposed amended complaint, the claim is not cognizable under § 1983.  Furthermore, disability is not a suspect classification under the Equal Protection Clause." *Id.* at 8-9.

An Amended Complaint was filed, Dkt. Nos. 22 – 23, and an Answer was served by Defendants. Dkt. No. 28.

**Amended Complaint**

In the Amended Complaint ("AC") Plaintiff brings retaliation claims against Jennings and VanAuken pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that on January 2, 2018, he was involved in an incident while employed as a NYSP Trooper where he was struck by a motor vehicle and forced to discharge his firearm to stop the driver of the vehicle from striking his partner.  Plaintiff suffered significant physical injuries as a result of the incident.  Thereafter, Plaintiff was on extended sick leave.  Plaintiff contends he needed time to treat his physical injuries, and while on sick leave was diagnosed as suffering from Post-Traumatic Stress Disorder ("PTSD") as a result of the events on January 2, 2018. While on extended sick leave, Plaintiff was contacted by VanAuken who was, at the time, a Captain in the NYSP, assigned to Zone 2 as the Zone Commander, and Plaintiff's supervisor.  These contacts were by telephone and in-person sick leave visits ("SLVs") pursuant to NYSP's Extended Sick Leave Policy.

Plaintiff contends that VanAuken was initially supportive and "appeared to generally care about Abbott's progress both physically and mentally." AC, ¶ 40. However, Plaintiff alleges that shortly after he was diagnosed with PTSD and depression due to the January 2, 2018 incident, VanAuken began to indicate that Plaintiff needed to return to work.  Plaintiff contends that VanAuken's conduct and statements were unprofessional and harassing. Plaintiff, either himself or through representatives, made complaints to NYSP officials about VanAuken's conduct and statements, including to Jennings.  Between January 2018 and December 2018, Jennings was employed by NYSP as a Major in HR, where she was responsible for

3

"administrative oversight."  Def. Statement of Material Facts ("Def. SOMF"), ¶ 3.[1]

Plaintiff contends that as a result of his complaints (which he characterizes as protected

activity), "he was subject to increasingly abusive comments and phone calls from

VanAuken and others," and that "he was forced to continue with detrimental sick leave

visits by Major Jennings and was offered no alternatives." AC ¶¶ 137, 138, *see also id.*

¶ 139 ("As a result of Abbott's protected activity, he was subject to abuse by VanAuken

including being berated that he was letting his PTSD get out of hand, was repeatedly

called and asked when he was returning to work and subjected to other conduct.").

Plaintiff contends that because of VanAuken and Jennings' retaliation against him, he

"suffered increased PTSD symptoms, sleeplessness, anxiety, depression, nightmares,

stomach upset, difficulty in his relationship, suicidal thoughts, and other mental and

emotional distress, including regression of his treatment for PTSD." *Id.* ¶ 142. He seeks

to be "compensated for this mental and emotional distress by VanAuken and Jennings."

*Id*. ¶ 143.

## III.    STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly

disputed facts in the light most favorable to the non-moving party, *see Scott v. Harris*,

127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is

no genuine issue as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); *see O'Hara v. National Union Fire Ins. Co. of

Pittsburgh, PA,* 642 F.3d 110, 116 (2d Cir. 2011).  If the movant shows that there is no

genuine dispute as to any material fact, the nonmoving party must identify probative

---

[1] The Court cites to Defendants' Statement of Material Facts when Plaintiff either admits the asserted fact, or fails to provide a sufficient basis to deny the asserted fact.

evidence in the record from which a reasonable fact finder could find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *see Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts.").  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *see Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)( "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a   motion for summary judgment.") (citation omitted); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)("Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact.").

## IV.     DISCUSSION

### NYSP Extended Sick Leave Policy

NYSP's Extended Sick Leave Policy is governed by Members Manual Article 8, with Article 8D9 specifically setting forth the policy for Division of New York State Police Members ("Members") who take Extended Sick Leave. Def. SOMF ¶ 12. Per Article 8D9, if a Member is absent for more than 3 days due to illness, the Member is required to submit medicals to a first-line supervisor within 5 days of the occurrence. *Id.* ¶ 14. For Members who are absent for more than thirty days, the policy requires a visit by the Zone Commander or Lieutenant-BCI every thirty days (30), and after three months of sick leave, the policy requires a visit by the Troop or Detail Commander only every three

5

(3) months. Pl. Response to Def. SOMF ("Pl. Resp. SOMF"),[2] ¶ 15.  The policy requires the visiting official to complete a Sick Leave Progress Report (PERS-44) as well as a memorandum detailing the Member's progress toward recovery.  Per the policy, that information is then transmitted to the Benefits Administration Unit by the Troop Commander for review and determination of duty status by a NYSP Physician. Def. SOMF ¶ 15.

Plaintiff contends that during his extended sick leave visits ("SLVs") he was subjected to a variety of insults, insistence that he ignore his doctors, and demands that he return to light duty despite his doctors' orders. Pl. Resp. SOMF ¶ 15.  Per the policy, a Zone Commander, including VanAuken, would have no role in determining whether a Member on extended sick leave returns to work. Def. SOMF ¶ 17. Nevertheless, Plaintiff contends VanAuken represented that he could force Plaintiff back to work, repeatedly indicated that Plaintiff needed to return to work, and stated that Plaintiff's leave was getting out of hand - all in an effort to pressure Plaintiff back to work.  Pl. Resp. SOMF ¶ 17.  Plaintiff admits, however, that the Division Physician ultimately determines whether a Member on extended sick leave is cleared to return to work. Def. SOMF ¶ 18.

### Plaintiff's interactions with Defendants/Plaintiff's complaints/ Defendants' awareness of these complaints/acts of alleged retaliation

SLVs were conducted with Abbott: on February 6, 2018, March 5, 2018, April 5, 2018, and May 9, 2018 by then-Zone Commander VanAuken; on June 12, 2018 by then-Troop Commander William McEvoy and Lieutenant Robert Croswell; on July 19, 2018 by then-Zone Sergeant Jason Cease; on September 9, 2018 by VanAuken and

---

[2] The Court cites to Pl. Resp. SOMF where Plaintiff has supported his denial with appropriate record citations.

Cease; and on January 2, 2019 and April 24, 2019 by Captain Kristina Sisbower and

Cease. Def. SOMF ¶ 28.  All sick leave visits for Plaintiff were conducted at Major

McEvoy's approval and per Article 8D9, not at the independent direction of VanAuken or

Jennings. *Id.* ¶ 30.  Plaintiff's medical records provided at the SLVs were transmitted by

Jennings to the NYSP Benefits Administration Unit. *Id.* ¶ 33.  Those medicals went in a

confidential medical file for review by Division Physician Dr. Kelleher, who made

medical recommendations regarding Plaintiff's ability to return to work. *Id.*

Defendant VanAuken conducted an SLV with Plaintiff on February 6, 2018, at

VanAuken's office in the State Police barracks in Binghamton, NY ("SP Binghamton").

Def. SOMF ¶ 31. Defendant VanAuken said nothing "pushy or abusive" at the February

6, 2018 SLV. *Id.* ¶ 32. Dr. Kelleher found on February 14, 2018 that Plaintiff was still

recovering and unable to return to work at that time. *Id.* ¶ 34.

Defendant VanAuken conducted an SLV with Plaintiff on March 5, 2018 at

VanAuken's office at SP Binghamton. *Id.* ¶ 35. VanAuken gave Plaintiff a modified duty

form, and used no profanities during the meeting. *Id.* Plaintiff contends, however, that

VanAuken said that Plaintiff needed to come back to work and "was pushy" about

Abbott doing so. Pl. Resp. SOMF  ¶ 36.  On March 9, 2018, Dr. Kelleher found that

Plaintiff was still recovering and unable to return to work at that time. Def. SOMF ¶ 37.

Defendant VanAuken conducted an SLV with Plaintiff on April 5, 2018 at

VanAuken's office at SP Binghamton. *Id.* ¶ 36.  Plaintiff contends that at this SLV

VanAuken said to Plaintiff that his "damn doctors" would keep him out of work but he

needed to get back to work. *Id.* ¶ 39.  VanAuken and Plaintiff discussed the issue of

modified duty as an option. VanAuken did not provide Plaintiff with another modified

duty form, but, Plaintiff contends, "VanAuken brought up modified duty again and again told Plaintiff he needed to get back to work." *Id.* ¶ 40.

VanAuken and Plaintiff had a phone conversation at the end of April.  During that phone call they discussed scheduling the next SLV. VanAuken asked about the modified duty form, and Plaintiff said he did not think his doctor would sign it.  Def. SOMF ¶ 42.  Plaintiff contends that during that phone call, "VanAuken said that Plaintiff's doctors were full of shit. He was threatening and demanding that Abbott get the modified duty form signed and return to work." Pl. Resp. SOMF  ¶ 42. Plaintiff had made no complaints about VanAuken before this phone call, and agrees that nothing that occurred before or during this phone call could be deemed retaliation. Def. SOMF ¶ 43.

Plaintiff asserts that on April 25, 2018, he contacted the Employee Assistance Program (EAP) and reported to Elliot Boyce (Head Coordinator of EAP) and Joseph McCabe (Troop C EAP Member) his concerns of harassment by VanAuken during the April phone call.  AC ¶¶ 62-64.  Plaintiff admits, however, that VanAuken would not get information about an EAP call and neither Boyce nor McCabe ever made VanAuken or Jennings aware of Plaintiff's EAP complaint about VanAuken. Def. SOMF ¶¶  44-50.

Plaintiff spoke with VanAuken by phone on May 3, 2018 regarding rescheduling an SLV. Plaintiff contends that "VanAuken immediately asked Plaintiff if he were cleared to return to work" and, when Plaintiff said he was not, VanAuken said to Plaintiff "not to be a dick, you weren't blown up by an I.E.D.'" Pl. Resp. SOMF ¶ 51.

On May 10, 2018, Plaintiff spoke by telephone to Maria Morris, Deputy General Counsel to the New York State Troopers PBA ("PBA"), the police union that represents

8

Members of the Division of State Police. Def. SOMF ¶¶ 52-53. Plaintiff told Morris he did

not feel comfortable handing his medical records to VanAuken at SLVs, and he

complained about the frequency of SLVs. *Id.* ¶ 55.  Morris told Plaintiff he could send

his medical records directly to HR, and she would speak to Jennings to verify this.  *Id.* ¶

56. Abbott testified that he told Morris about VanAuken's statements to him and about

VanAuken's insistence that he get a modified duty report and return to work despite his

physicians' orders. Pl. Resp. SOMF ¶ 55. Plaintiff points out that Morris could not recall

exactly what Abbott said in this regard, but she recalled it included concerns about the

frequency of the SLV's, handing medical records to VanAuken, people not being

particularly sensitive to Abbott, people pressuring Abbott to return to work, and that she

reported these concerns to Jennings. *See* Def. Ex. 8, Morris Deposition pp. 12-15; 36.

When asked whether Abbott specifically referenced treatment by VanAuken, Morris

testified that she was not 100% certain Plaintiff was speaking specifically about

VanAuken, but stated that Abbott claimed that VanAuken was one of the people either

calling him or stopping by his house. *Id.* 14.  As to the frequency of the SLV's, Morris

testified: "Frank was concerned regarding the frequency with which representatives

from his station or his zone were contacting him, and I don't recall if they were

contacting him by phone or in person, but he felt that they were contacting him too

frequently and he was concerned . . . that they were not being particularly sensitive to

him." Morris, Dep. p. 12.

    Jennings and Morris had a telephone conversation regarding Plaintiff before the

May 2018 SLV. Def. SOMF ¶ 57.  Morris requested, and Jennings agreed, that

Plaintiff's medical records could be submitted directly to HR rather than handed over at

SLVs. Def. SOMF ¶ 58.  Morris specifically referenced VanAuken in connection with "questions about the medical records, questions about the visits and some concerns that Frank had had about statements that had been made to him." Morris Dep. p. 15. When Morris was asked whether she told Jennings that VanAuken "was being demeaning or swearing" at Plaintiff, Morris responded: "I don't believe I used those words. I believe what I said was that he was making [Plaintiff] uncomfortable, but I don't recall." *Id*. p. 36.  Morris never requested to Jennings that VanAuken be counseled, and Jennings did not tell Morris that VanAuken would be counseled. Def. SOMF. ¶¶ 59-60. Morris also testified that she asked Jennings "about the frequency of the sick visits because Frank Abbott had asked me to ask about that, and I did mention that he had concerns about some of the things that they were saying to him." Morris Dep. at 14. Morris states that Jennings "advised that she was going to be reaching out to Captain VanAuken and let him know that Frank could send the medical records directly and that she would speak to him about the frequency of the visits." *Id.*  Morris had no other conversations with anyone at NYSP HR regarding Plaintiff. Def. SOMF ¶ 66.

On May 11, 2018, after Jennings spoke with Morris, Jennings called VanAuken and told him Plaintiff's medicals would now be submitted to the NYSP Benefits Administration Unit, which VanAuken acknowledged. Def. SOMF ¶ 62. This was the only verbal interaction they had regarding Plaintiff before the instant lawsuit was filed. *Id.* ¶ 64. Based on VanAuken's deposition testimony and Jennings' declaration, Defendants assert that the evidence is undisputed that Jennings said nothing during that phone call about any other complaints that Plaintiff had about SLVs. *Id.* ¶ 63 (citing VanAuken Dep., p. 54); Jennings Decl., ¶ 6. Plaintiff denies this contention based on

10

VanAuken's reaction to Plaintiff when he came to the May 2018 SLV, contending that "VanAuken was visibly upset-red-faced and angry. He began the conversation with 'where's your shit?' and then referenced Abbott's medical records despite allegedly knowing that Plaintiff would be sending the medical records to Albany." Pl. Resp. SOMF ¶ 63 (citing Abbott Dep, pp. 108-110); *see* Abbott Dep. p. 109 ("When I walked in the room, the captain was clenching his fists and he was angry. And the first thing he said to me was, . . .  where is your shit. And I said, excuse me. He said, you shit,[3] your medical records."). Plaintiff's denial is also based upon a May 14 text message from Morris to Plaintiff where Morris gives Plaintiff the address to send his medical records, and states: "I presume U got the message U can meet with VanAuken, but no medical records. And I believe he was counseled on how he conducts himself with you too!" Def. Ex. 10. Plaintiff also cites to Jason Cease's statements during an interview in an internal investigation conducted because of Plaintiff's personnel complaint against VanAuken and another officer. There, Cease stated that he believed VanAuken requested Cease accompany him on the September 9, 2018 SLV because "I think [VanAuken] was already aware that Frank may have been displeased with him and I just think he wanted another witness there," and that VanAuken "mentioned" that Morris made the recommendation that Plaintiff's medical records be sent directly to the Division "and now there is this wrench in it where he is not providing his medical records to us." Cease Decl., Ex. A, at Bates pp. 622, 625. Plaintiff also cites to his own testimony indicating that during the July SLV, Cease referenced a "beef" between Abbott and VanAuken, *see* Abbot Dep. pp. 123-124, and to Cease's statement during the internal investigation

---

[3] It is unclear from the transcript whether this is a typographical error for "your shit," or whether VanAuken was calling Plaintiff a "shit."

indicating that there were discussions at the station about Abbott with VanAuken. *See* Cease Decl., Ex. A, at Bates pp. 622-625.  This, to Plaintiff, indicates that VanAuken had been told by Jennings that Plaintiff complained about him.  Further, Plaintiff references his testimony regarding a September 2018 telephone conversation he had with Jennings.  He asserts that prior to the September 5, 2018 SLV, he and his advocate, James Banish, called Jennings.  During this phone call, Plaintiff indicated that he wanted to complain about VanAuken's professionalism during SLVs. *See* Abbott Dep. 132-134. Jennings purportedly stated that she had addressed the issue with VanAuken and that he would be acting in a professional manner at the upcoming SLV. *Id.*

Based on this evidence, and drawing reasonable inferences in Plaintiff's favor, a fact finder could reasonably conclude that, before the May 2018 SLV, Jennings advised VanAuken that Plaintiff complained about the way VanAuken was treating him at SLVs.

At the May 2018 SLV, Plaintiff contends that after he told VanAuken that he would be providing his medical records directly to HR, VanAuken purportedly stated: "I can force you under the division doctors, and see it's a bunch of shit and force you back to work." Abbott Dep. p. 110.  Plaintiff then told VanAuken that he did not appreciate the way he had been treated, that he did not appreciate being compared to another Trooper who went out on extended medical leave, and the conversation became "a little heated." Def. SOMF ¶ 75. According to Plaintiff, Plaintiff told VanAuken that he had always done his job properly but felt he was now being treated unfairly. Abbott Dep. p. 112.  When asked at his deposition why he felt he was being treated unfairly, Plaintiff stated that he felt that he was "being pushed back to work almost. Almost like a pass by shooting, so I

guess in a way I did tell him that I didn't appreciate his behavior." *Id.* It is undisputed that no one told Jennings that the May 2018 SLV had become "heated." Def. SOMF ¶ 76.

Sergeant Matthew Pokigo, who recently had been made Station Commander at SP Binghamton, visited Plaintiff at his home in May 2018 to check up on him and to bring Plaintiff paperwork from Dr. Kelleher. Def. SOMF ¶ 78; Pl. Resp. SOMF ¶ 78; see AC ¶ 87 ("In June 2018, Sergeant Matthew Pokigo, Abbott's first line supervisor, hand delivered to Abbott a letter from the New York State Police Division of State Police Physician concurring with Abbott's physician that Abbott was disabled at the present time."). Pokigo did not visit Plaintiff at VanAuken's behest. Def. SOMF ¶ 79. Plaintiff expressed a range of emotions to Pokigo, appeared frustrated to Pokigo, and reported to Pokigo about VanAuken making a comment about an I.E.D. *Id.* ¶ 80. There is no dispute Pokigo did not report to VanAuken or anyone else anything what Plaintiff said about VanAuken. *Id.* ¶ 82.

Plaintiff's June 2018 SLV took place on June 12, 2018 at Plaintiff's house, and, as indicated above, was attended by Plaintiff, Major McEvoy, Lt. Croswell, and PBA delegate Davis. *Id.* ¶ 83. Neither McEvoy nor Croswell were aware at the time that Plaintiff had complained about VanAuken, *id.* ¶ ¶ 84, 87, 89, and Plaintiff does not know if anything Croswell said on June 12, 2018 was at VanAuken's behest. *Id.* ¶ 86. However, as also indicated above, Plaintiff testified Davis told him "they" were upset because Plaintiff was sending medical records to Albany which they viewed as disrespectful.

13

Plaintiff's July 2018 SLV visit took place at his house on July 19, 2018, and was attended by Plaintiff and Cease. *Id.* ¶ 91.  As indicated above, Plaintiff testified that during this SLV, Cease referenced a "beef" between Abbott and VanAuken. *See* Abbott Dep., pp. 123-124.

There was no August 2018 SLV.  *Id.* ¶ 96. There is not dispute that Plaintiff had no direct contact with VanAuken in June, July or August 2018. *Id.* ¶ 95.

Plaintiff's September 2018 SLV visit took place at Plaintiff's house on September 5, 2018, and was attended by Plaintiff, Banish, VanAuken, and Cease.  *Id.* ¶ 97.  As indicated above, prior to this SLV, Banish and Plaintiff called Jennings on the phone. *Id.* ¶ 98. During this call, Plaintiff indicated that he wanted to complain about VanAuken's professionalism during SLVs. *See* Abbott Dep. 132-134. Jennings purportedly stated that she had addressed the issue with VanAuken and that he would be acting in a professional manner at the SLV. *Id.*  There is no dispute that VanAuken did not harass Plaintiff at the September 5, 2018 SLV.  *Id.* ¶ 103.  Plaintiff only spoke with Cease, and VanAuken only commented about how nice Plaintiff's house was. *Id.*¶ 104.  According to Plaintiff, VanAuken acted "like he should have as a Captain in the State Police" at the September 5, 2018 SLV.  *Id.* ¶ 105.

It is undisputed Plaintiff had no personal contact or telephone calls with VanAuken after September 5, 2018.  *Id.* ¶¶ 107-108.

On September 17, 2018, Banish emailed a note from Plaintiff's treating psychologist, Dr. Houk, to Jennings.  *Id.* ¶ 115.  The note indicated:

To whom it May Concern:

It has come to my attention that regular, monthly visits to the patient's home are made by work colleagues.

> These visits cause a significant increase in PTSD symptoms for the patient, and impair progress in therapy for PTSD.
>
> It is requested that these regular home visits cease and that communication from uniformed members of the police department be provided through US mail. This request is necessary in order that the patient be allowed to progress in psychotherapy for his PTSD symptoms.

*Id.* ¶ 116.

VanAuken never saw Dr. Houk's note until after the instant lawsuit was filed, and no one told him in September 2018 that Plaintiff had requested to be excused from SLVs. *Id.* ¶ 118.  Plaintiff had no SLVs with VanAuken following September 17, 2018, Vanauken did not berate Plaintiff after September 17, 2018, and there was no harassing conduct from VanAuken after September 17, 2018. *Id.* ¶¶ 118-121.

Major McEvoy became aware via Jennings that HR had received the note from Dr. Houk opining that regular monthly sick leave visits had caused an increase in Plaintiff's PTSD symptoms. *Id.* ¶ 122.  Per McEvoy's request, on September 20, 2018 Jennings provided him with a timeline with a history of Plaintiff's injuries and medical assessments regarding disability.  *Id.* ¶ 123. Because Article 8D9(e) permits sick leave visits every three months if a Member is absent for more than three months, and because Plaintiff's treating physician had opined that sick leave visits every month were detrimental, it was determined by HR, in consultation with Dr. Kelleher, that Plaintiff's SLVs could be conducted every three months. *Id.* ¶ 124. Neither VanAuken nor Jennings had any decision-making input into the terms of Plaintiff's disability leave. *Id.* ¶¶ 109-112.

SLVs for Plaintiff were conducted on January 2, 2019 and April 24, 2019 by Captain Kristina Sisbower and Cease. *Id.* ¶ 125.  Because Jennings' job description had

changed, Major R. Anthony Oliver assumed Jennings' former role in transmittal of documents related to 2019 SLVs. *Id.* ¶ 126.  Thus, Defendants contend, Jennings had no role in scheduling the January and April 2019 SLVs. *See id.* ¶ 127. Plaintiff opposes this proposition, citing to an email exchange attached as an exhibit to Plaintiff's Counsel's affidavit. *See* Dkt. No. 57, Ex. A.  But, as Defendants argue, "a plain reading of the February 2019 e-mail exchange offered by Plaintiff's counsel is only that Major Jennings corrected staff, who mistakenly were going to conduct monthly sick leave visits, to advise them that his next extended sick leave visit was not due until three months after the January 2019 visit." Def. Reply, at 8. Thus, as Defendants also argue, Jennings acted to make Plaintiff's SLVs less frequent.

VanAuken had no role in scheduling or attending the January and April 2019 SLVs. Def. SOMF ¶ 128.

Plaintiff filed an internal personnel complaint with NYSP in October 2018 regarding the conduct of VanAuken and non-party Sgt. Jason Hopf.  Def. SOMF ¶ 129. Plaintiff made allegations of harassment and improper work practices by Members of the Troop "C" supervisory staff, particularly as it relates to oversight of Plaintiff's extended sick leave. Def. Ex. 16.  Plaintiff filed no such personnel complaint regarding Jennings.  Def. SOMF ¶ 130.  Plaintiff participated in a "Member Witness Interview" on October 16, 2018 regarding his personnel complaint, which he reviewed and signed, and which he concedes is a fair and accurate transcript of that interview. *Id.* ¶ 131. Other witnesses who were interviewed in connection with the personnel complaint included:  VanAuken, Hopf, Croswell, Davis, Trooper Christopher Condon, McEvoy,

Pokigo and Cease. *Id.* ¶ 132. The outcome of the personnel complaint against VanAuken and Hopf was "unsubstantiated". *Id.* ¶ 133.

Plaintiff filed a Complaint with the New York State Division of Human Rights ("DHR") on October 26, 2018 against VanAuken, Hopf, and NYSP alleging disability discrimination and retaliation. *Id.* ¶ 134. Plaintiff never filed a DHR Complaint against Jennings. *Id.* ¶ 135. In his DHR Complaint, Plaintiff described the most recent act of alleged discrimination as having occurred on May 14, 2018. *Id.* ¶ 136. After investigation, and following opportunity for review of related information and evidence by the named parties, the DHR on April 22, 2019 issued a decision determining that the was no probable cause that respondents VanAuken, Hopf or NYSP engaged in or are engaging in unlawful discrimination or retaliation. *Id.* ¶ 137.

Plaintiff alleges in this case that people at SP Binghamton were ordered by VanAuken not to communicate with him. However, Plaintiff has no personal knowledge that VanAuken, Jennings or anyone at NYSP gave an order to people within NYSP to stop talking to Plaintiff. Def. SOMF ¶ 138. Rather, Plaintiff contends that another Trooper's wife told Plaintiff's wife "we can't really have anything to do with you. They're saying around the station for no one to talk to Frank." Abbott Dep. p. 161. Plaintiff also states in his Affidavit that he was told by two different officers that an order was given for people not to speak to Plaintiff. Abbott Aff., Dkt. No. 57-1, ¶ 3.[4]  However, this information does not indicate who it was that purportedly gave the order.  Both VanAuken and Jennings affirm that they never ordered anyone at NYSP not to talk or communicate with Plaintiff.  Def. SOMF ¶¶ 140-141.  In addition, Defendants present

---

[4] As Defendants point out, one of these two officers named in the affidavit is the officer whose wife purportedly told Plaintiff's wife that no one could speak to Plaintiff or his family.

evidence that Pokigo, Hopf, McEvoy, Cease, Condon and Davis were never told by VanAuken, Jennings or anyone else at NYSP to avoid contact with Plaintiff or his family, or to withhold benefits, resources or support from Plaintiff. *See id.* ¶ 142.  Plaintiff denies this contention by citing to the afore-referenced page of his deposition and to paragraph 3 of his Affidavit.  *See* Pl. Resp. SOMF ¶ 142.

Plaintiff admits that VanAuken never had any conversations with anyone involved with PBA about not providing resources to Plaintiff, and is not aware of any communications with PBA regarding Plaintiff. Def. SOMF ¶ 144. Plaintiff also admits that neither VanAuken nor Jennings ever instructed or encouraged any other NYSP employee to withhold benefits, resources or support from Plaintiff, or to avoid contact with him or his family in any way, nor were they given any such directive by anyone at NYSP.  *Id.* ¶ 145

Plaintiff admits that based on the documentation generated in connection with his SLVs and the medical documentation he submitted, Dr. Kelleher determined Plaintiff was not capable of returning to modified duty or full and strenuous duty prior to his retirement on December 26, 2019. *Id.* ¶¶ 113, 146. Plaintiff also admits that no other NYSP employees, including VanAuken and Jennings, had any role in determining Abbott's ability to return to work. *Id.* ¶ 147.  However, Plaintiff contends that he was unable to return to NYSP in part because of the psychological toll caused by VanAuken's harassment and Jennings's failure to remedy or stop the harassment.  Pl. Resp. SOMF ¶ 143.  Plaintiff also states that he "does not know if he could have returned eventually; however, he was forced to resign as a result of the behavior of

VanAuken." *Id.* ¶ 158.  Plaintiff admits that neither VanAuken nor Jennings had any role in the decision whether to approve his disability retirement. *Id.* ¶ 159.

Plaintiff admits he has no personal knowledge whether Jennings had any intent to retaliate against him, Def. SOMF ¶ 161, but states "[i]ntent can be inferred from Jennings' refusal to modify sick leave visits which could have been done and still complied with the policy." Pl. Resp. SOMF ¶ 162.  Regarding whether VanAuken had the intent to retaliate against him, Plaintiff asserts "[i]ntent can be inferred from Defendant VanAuken's treatment of Plaintiff and his insistence that Plaintiff return to work." *Id.* ¶ 163.

### Analysis

"[T]he elements of a retaliation claim brought pursuant to Section 1983 'mirror those under Title VII." *Day v. City of NY*, 2015 US Dist LEXIS 161206, at *16 (S.D.N.Y. Nov. 30, 2015)(quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).  These claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  *See Roman-Malone v. City of N. Y.*, No. 11 Civ. 8560 (PAC), 2013 U.S. Dist. LEXIS 104368, at *14, 2013 WL 3835117, at *4 (S.D.N.Y. June 25, 2013).

To establish a *prima facie* case of retaliation, the plaintiff must prove that "(1) he was engaged in protected activity;[5] (2) the [defendant] was aware of that activity; (3) the [plaintiff] suffered a materially adverse action; and (4) there was a causal connection

---

[5] Defendants do not challenge that Plaintiff's complaints constituted protected activity, and absent argument on this issue the Court proceeds as if Plaintiff satisfies the first element of the *prima facie* case. See *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir. 2002) ("A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.") (internal quotation marks and citation omitted).

between the protected activity and that adverse action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F .3d 11,24 (2d Cir. 2014) (citation and internal quotation marks omitted). The burden of proof at the *prima facie* stage has been characterized as *"de minimis." Hicks*, 593 F.3d at 166.

"In the context of a retaliation claim, 'an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Morris v N.Y. State Police*, 268 F Supp 3d 342, 368-369 (N.D.N.Y. 2017)(quoting *Vega*, 801 F.3d at 90).  "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination. . . . '[T]he anti-retaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Id.* at 369 (quoting *Vega*, 801 F.3d at 90).  A plaintiff may also allege that he suffered from an "atmosphere" of adverse employment action.  Under this theory, "a combination of seemingly minor incidents" may satisfy the adverse-action prong "once they reach a critical mass." *Rooney v. Brown Group Retail, Inc.*, 2011 U.S. Dist. LEXIS 34918, at *44-45 (E.D.N.Y. March 31, 2011)(citing *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) (applying the "atmosphere" theory of adverse action to First Amendment retaliation claims)); *see also Barry v. New York City Police Dept.*, 2004 U.S. Dist. LEXIS 5951 (S.D.N.Y. April 7, 2004) ("Lesser actions or seemingly minor incidents can . . . be considered adverse employment actions once they reach a critical mass of unreasonable inferiority."); *Gonzalez v Bratton*, 2000 US Dist LEXIS 12002, at *47 (S.D.N.Y. Aug. 21, 2000)("[T]he accumulation of small reprisals may be aggregated so as to permit consideration of their impact in their totality and to support their being

20

deemed sufficient to constitute adverse employment action . . . ." )(citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 764 (2d Cir. 1998)).  "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)).

If the initial burden is met, "a 'presumption of retaliation' arises, which the [defendant] "may rebut by 'articulating a legitimate, non-retaliatory reason for the adverse employment action.'" *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (brackets omitted) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)); *see Holcomb*, 521 F.3d at 138 (Once the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action.")(quoting *McDonnell*, 411 U.S. at 802). If the defendant provides a legitimate, non-discriminatory basis for the adverse action, "'the presumption of retaliation dissipates,' and the burden shifts back to the plaintiff to prove 'that the desire to retaliate was the but-for cause of the challenged employment action.'" *Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 (S.D.N.Y. 2020) (citing *Ya-Chen Chen*, 805 F.3d at 70).  Although "but-for" causation does not require a showing that retaliation was a defendant's sole motive, showing that retaliation was "simply a 'substantial' or 'motivating' factor in the [defendant's] decision" is insufficient to prove a retaliation claim. *Id.* at 340; *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015)("It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision.")(citation omitted).  "'[B]ut-for' causation

does not require proof that retaliation was the only cause of the [defendant's] action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

### Neely Jennings

Assuming, *arguendo*, that Plaintiff establishes a *prima facie* case of unlawful retaliation against Jennings, he fails in his ultimate burden to establish such a claim. The adverse actions allegedly caused by Jennings were primarily that she failed to modify Plaintiff's SLVs so that they were not conducted by VanAuken, and to reduce the frequency of these visits after Plaintiff had been on medical leave for ninety (90) days. *See* AC ¶ 138 ("As a result of Abbott's protected activity, he was forced to continue with detrimental sick leave visits by Major Jennings and was offered no alternatives."); Pl. MOL, at 8 ("Defendants were not following the sick leave policy. The sick leave policy only required a visit with a Trooper every three months after that Trooper had been out of work for ninety (90) days. By contrast, Defendants insisted Abbott have a sick leave visit every month. The sick leave policy didn't require any additional calls outside of the visit once every three months, yet Abbott was subjected to calls on a consistent basis."); Pl. Resp. SOMF ¶ 162 ("Intent [to retaliate] can be inferred from Jennings' refusal to modify sick leave visits which could have been done and still complied with the policy."). Defendants assert that Plaintiff's SLVs were conducted in accordance with Article 8D9, and neither VanAuken nor Jennings had any role in or power to change the requirement for and/or the timing and frequency of Extended Sick Leave visits. Def. MOL at 24. This constitutes a facially legitimate, non-discriminatory reason for Jennings' conduct, and shifts the burden back to Plaintiff to prove "that the desire to retaliate was the but-for

cause of the challenged employment action." *Smith*, 440 F. Supp. 3d at 340 (citing *Ya-Chen Chen*, 805 F.3d at 70).  However, Plaintiff "adduces no sufficient evidence to show that [Defendants'] proffered reasons are pretextual." *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006).

It is undisputed that neither VanAuken nor Jennings had any decision-making input into the terms of Plaintiff's disability leave. Def. SOMF ¶¶ 109-112.  It is also undisputed that all SLVs were conducted at Major McEvoy's approval and per Article 8D9, not at the independent direction of VanAuken or Jennings. *Id.* ¶ 30.  As such, Jennings had no personal involvement in the decision of whether or how often sick leave visits proceeded. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)(To establish a defendant's individual liability in a  Section 1983 lawsuit, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation.") (citations omitted); *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)(A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"); *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)(holding that "there is no special rule for supervisory liability" and that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'")(quoting *Iqbal*, 556 U.S. at 676).

Further, even if Jennings' conversations with Morris and Plaintiff put her on notice of protected activity by Plaintiff, it is undisputed that the NYSP Division Physician

ultimately determines whether a Member on extended sick leave is cleared to return to work. *Id.* ¶ 18.  Thus, the evidence fails to establish Jennings' personal involvement in the SLV determinations, or that there was a causal connection between Plaintiff's complaints and the alleged adverse action allegedly perpetrated by Jennings. In fact, after Dr. Houk's note (which opined that regular monthly SLVs had caused an increase in Plaintiff's PTSD symptoms) was forwarded to McEvoy by Jennings, it was determined by HR in consultation with Dr. Kelleher that SLVs for Plaintiff would continue but be conducted every three months.

To the extent Plaintiff contends Jennings had a role in scheduling sick leave visits in 2019, that contention is refuted by the fact that Jennings had changed positions at the end of 2018 and, as indicated above, her email about the 2019 SLVs indicates only that she corrected staff who mistakenly were going to conduct monthly sick leave visits.

To the extent that Plaintiff contends that Jennings retaliated against him by failing to stop VanAuken from conducting the monthly SLVs, that argument is refuted by the evidence that Major McEvoy approved the SLVs and that VanAuken held the position of Zone Commander at pertinent times.  Given the combination of these two facts, and although the policy states that after a Member is on sick leave for more than three months a "Troop or Detail Commander" will visit the Member, Plaintiff has not presented evidence from which a reasonable fact finder could conclude that Jennings would have acted any differently in the absence of an alleged retaliatory motive. *See Zann Kwan*, 737 F.3d at 846 ("'[B]ut-for' causation does not require proof that retaliation was the only

cause of the [defendant's] action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.").

To the extent that Plaintiff contends that Jennings retaliated against him by ordering others not to speak with him or to deprive him of resources or support, that contention is defeated by the fact that Plaintiff has no evidence that Jennings did any of these things. Plaintiff's speculation is insufficient to defeat a motion for summary judgment. *See, e.g., Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993) (party "may not rely simply on conclusory statements" to defeat summary judgment).

Because the Court finds that Jennings did not violate Plaintiff's federal statutory or constitutional rights, the Court need not address whether Jennings is entitled to qualified immunity. *See Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020)("[P]ursuant to the two-step framework articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001), when an official raises qualified immunity as a defense, the court must consider whether: (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct.'" *Id.* (cleaned up).

### Jeffrey VanAuken

Plaintiff also fails to establish an actionable retaliation claim against VanAuken. The only potentially harassing conduct personally performed by VanAuken following his awareness of a complaint by Plaintiff occurred at the May 2018 SLV. There, VanAuken appeared angry and he and Plaintiff got into a "heated discussion" during which Plaintiff felt he was being forced back to work. However, "[t]o establish a causal connection

between the protected activity and the alleged hostility, [Plaintiff] must demonstrate 'some increase in the discrimination or harassment—either a 'ratcheting up' of the preexisting behavior, or new, additional forms of harassment[.]'" *Bacchus v. New York City Dep't of Educ.*, 137 F. Supp. 3d 214, 244–45 (E.D.N.Y. 2015)(quoting *Hall v. New York City Dep't of Transp.,* 701 F.Supp.2d 318, 339 (E.D.N.Y. 2010), in turn quoting *Hall v. Parker Hannifan Corp.,* 824 F.Supp.2d 464, 469 (W.D.N.Y.2009)). "'If, however, 'the discrimination was just as bad before the employee complained as it was afterwards, then the employee's complaints cannot be said to have led to that discriminatory behavior.'" *Id.* (quoting *Hall v. New York City Dep't of Transp.,* 701 F.Supp.2d at 339).

Plaintiff contends that VanAuken regularly pressured him to return to work, and no reasonable fact finder could conclude that VanAuken's comments at the May 2018 SLV represented a ratcheting up of VanAuken's pre-existing behavior.  Thus, Plaintiff fails to establish a causal connection between his complaint about VanAuken and VanAuken's harassment at the May 2018 SLV.  Furthermore, because Plaintiff's evidence indicates that VanAuken's conduct at the May 2018 SLV was a continuation of his harassment to force Plaintiff back to work, no reasonable fact finder could conclude that Plaintiff's complaint was a but for cause of the harassment.  Thus, Plaintiff fails to establish an actionable claim of retaliation against VanAuken based on workplace harassment.

Like with Jennings, Plaintiff fails to present anything more than speculation that VanAuken retaliated against him by ordering others not to speak with him or to deprive him of resources or support.  That speculation is insufficient to defeat the properly

supported summary judgment motion in this regard. S*ee, e.g., Ying Jing Gan,* 996 F.2d at 532.

Finally, like with Jennings, the Court need not address whether VanAuken is entitled to qualified immunity. *See Jones v.*, 963 F.3d at 224.

## V.    CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment, Dkt. No. 53, is **GRANTED** and the Amended Complaint is **DISMISSED**.

The Clerk of the Court may close the file in this matter.

**IT IS SO ORDERED.**

Dated: March 28, 2023

Thomas J. McAvoy
Senior, U.S. District Judge